# IN THE UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **CRIMINAL NO:** _____ |
| **v.** | : | **DATE FILED:** _____ |
| **JOHN R. HODDE** | : | **VIOLATIONS:** |
| | : | **18 U.S.C. § 1343 (wire fraud - 2 counts)** |

## <u>INFORMATION</u>

**THE UNITED STATES ATTORNEY CHARGES THAT:**

At all times material to this information:

1. Defendant JOHN R. HODDE lived in Virginia and was the General Manager of the Alexandria, Virginia, office of Barbizon Capitol, Inc. ("Barbizon"). Barbizon had provided defendant HODDE with a corporate American Express credit card account to use for business purposes.

2. Douglas S. Rae, charged elsewhere, was living in Coopersburg, Pennsylvania, and was employed at a company referred to herein as "Company A" as Manager of the Lighting Department, a supervisory position in Company A's West Chester, Pennsylvania facility. In that role, Rae was responsible for purchasing, and overseeing the purchasing of, lighting related products and services, including lamps and other items, as well as merchandise and services relating to larger projects such as studio set designs.

3. Company A was a general merchandise electronic retail company that marketed and sold a wide variety of products directly to consumers through various media,

including its television programming and the internet.   Company A had its principal place of business in West Chester, Pennsylvania.

4.   Lighting Equipment Sales and Service, Inc. ("LESS"), was a business entity with addresses in Allentown and Bethlehem, Pennsylvania, and was controlled and operated   by Douglas S. Rae.

5.   Lighting Products International, Inc. ("LPI"), was a business entity with addresses in Allentown and Bethlehem, Pennsylvania, and was controlled and operated by Douglas S. Rae.

6.   Barbizon was a company which sold a variety of lighting equipment to various customers, including Company A.

**THE SCHEME**

7.   From in or about February 2007 to in or about May 2013, defendant

**JOHN R. HODDE**

and Douglas S. Rae devised and intended to devise a scheme to defraud Company A, and to obtain money and property by means of false and fraudulent pretenses, representations and promises.

**MANNER AND MEANS**

It was part of the scheme that:

8.   Douglas S. Rae and defendant JOHN R. HODDE caused bogus invoices to be submitted to Company A, and to be paid by Company A, for product that was not supplied to Company A. They did so in the following ways:

a.      Douglas S. Rae used defendant JOHN R. HODDE's corporate American Express credit card account to purchase items for his personal use, and then to cover those expenses, Rae and defendant HODDE caused Barbizon to submit bogus invoices to

2

Company A for merchandise that Barbizon had not supplied to Company A.   In this manner, Rae and defendant HODDE caused Company A to pay over $560,000 for bogus invoices submitted to it.   Rae used most of these proceeds for his own personal expenditures.

        b.        Douglas S. Rae and defendant JOHN R. HODDE caused Company A to pay bogus invoices for product invoiced from LESS or LPI to Barbizon, and then from Barbizon to Company A, when in fact LESS, LPI, and Barbizon did not supply or ship any of the product to Company A.   In this manner, Rae and defendant HODDE caused Company A to pay over $200,000 for the bogus invoices.   Rae took most of these proceeds for his own personal use.

        It was further part of the scheme that:

        9.   In connection with Douglas S. Rae's personal use of defendant JOHN R. HODDE's corporate American Express account, Rae used the account to purchase numerous home appliances, airline tickets for him and his wife to visit their vacation home, personal electronics, dental services, and other items of a personal nature.

        10. On approximately a monthly basis, defendant JOHN R. HODDE reviewed his credit card charges for the month to determine which charges had been incurred by Douglas S. Rae.

        11. Defendant JOHN R. HODDE e-mailed Douglas S. Rae a summary of the charges Rae had incurred for the month.

        12. Douglas S. Rae responded by e-mail as to whether he disagreed concerning his responsibility for any of the charges summarized by defendant JOHN R. HODDE.   Rae then gave directions to defendant HODDE concerning specific language to put on fictitious invoices from Barbizon to Company A so that Barbizon would be reimbursed by Company A for Rae's use

3

of the Barbizon credit card account for his personal expenditures.   Rae's instructions typically included item descriptions, unit numbers, and prices.

13. By agreement, the bogus invoices Douglas S. Rae instructed defendant JOHN R. HODDE to generate built in a profit margin for Barbizon to retain, which was usually 10% of what Rae had charged on Barbizon's American Express account.   The approximate 10% mark-up was referred to at least once in an e-mail exchange between Rae and defendant HODDE as the "vig."

14. Sometimes Douglas S. Rae and defendant JOHN R. HODDE worked together to generate bogus invoices from Barbizon to Company A that were in dollar amounts equal to what Rae had charged on defendant HODDE's Barbizon corporate credit card account for the period, plus the approximately 10% mark-up.

15. Other times, the bogus invoices from Barbizon to Company A did not match the amount that Douglas S. Rae had charged for the month, and then usually Rae and defendant JOHN R. HODDE carried the balance forward and made up for it in future bogus invoices to Company A.

16. Defendant JOHN R. HODDE caused the bogus invoices from Barbizon, which he had created at the direction of Douglas S. Rae, to be submitted to Company A. Company A paid Barbizon for the amounts invoiced.

17. In connection with the transactions indirectly billed from LESS or LPI, to Barbizon, and then to Company A, Douglas S. Rae caused LESS and LPI to invoice Barbizon for certain products.   LESS and LPI did not supply or ship any of the pertinent product to Barbizon or Company A.

18. At Douglas S. Rae's direction, defendant JOHN R. HODDE caused Barbizon to pay the bogus LESS and LPI invoices.   Rae kept the proceeds for his personal use.

19. Douglas S. Rae and defendant JOHN R. HODDE caused Barbizon to submit corresponding bogus invoices to Company A for product purportedly sold by Barbizon to Company A.   Rae and defendant HODDE created the Barbizon invoices to Company A in amounts equal to the LESS and LPI invoices to Barbizon, plus an additional approximately 10% mark-up, which Barbizon was to keep.   Barbizon did not supply or ship any of the pertinent product to Company A.

20. Defendant JOHN R. HODDE caused the bogus invoices from Barbizon, which he had created at the direction of Douglas S. Rae, to be submitted to Company A. Company A paid Barbizon for the amounts of those invoices.

21. On or about each of the dates set forth below, in West Chester, in the Eastern District of Pennsylvania, and elsewhere, defendant

**JOHN R. HODDE,**

and Douglas S. Rae, for the purpose of executing the scheme described above, and conspiring and attempting to do so, caused to be transmitted by means of wire communication in interstate commerce the signals and sounds described below for each count, each transmission constituting a

5

separate count:

| COUNT | DATE | DESCRIPTION |
|---|---|---|
| 1 | 12/7/2010 | E-mail from defendant JOHN R. HODDE to Douglas S. Rae with Subject "Nov. AMEX" stating "Hi Doug, Your total AMEX charges were $ 27,378.72  - 22,209.90 (open credit)   balance due $ 5,168.82 x 10%( 516.88) = $ 5,685.70…" with attachment "Nov amex.xlsx," a list of credit card purchases |
| 2 | 12/20/2010 | E-mail from defendant JOHN R. HODDE to Douglas S. Rae with Subject "Invoice" stating "Thanks Doug.   John Hodde…" with attachment "37699.pdf," a Barbizon invoice to Company A totaling $5,687.50 |

All in violation of Title 18, United States Code, Sections 1343 and 1349.


_____
**ZANE DAVID MEMEGER**
**UNITED STATES ATTORNEY**